**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**TRACIE LYNN NORRIS**                                                          **PLAINTIFF**

**V.**                                                                                    **CASE NO. 3:08CV118**

**TUPELO PCH, LLC d/b/a
MAGNOLIA MANOR AT TUPELO**                               **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the court on the motions **[99, 101]** of Defendant Tupelo PCH, LLC d/b/a Magnolia Manor renewing its motion for judgment as a matter of law made at trial and again moving for judgment as a matter of law or, in the alternative, for a new trial.

Tracie Lynn Norris applied for a part-time cook position at Magnolia Manor in July 2006. A physical at the time of her application revealed that she was approximately four months pregnant. Magnolia Manor hired Norris on August 1, 2006.

Norris' baby was born on December 1, 2006 with Down's Syndrome and related complications, including cardiac and pulmonary problems. Norris' position was not available for her when she attempted to return to work. She subsequently filed the instant action alleging that she lost her employment because of her child's disability in violation of the American with Disabilities Act.

A jury trial was held before this court beginning on January 20, 2011. On January 21, 2011 a jury returned a verdict in favor of Norris and awarded her $2,400.00. Magnolia Manor made an *ore tenus* motion for judgment as a matter of law, which this court denied. Magnolia Manor subsequently filed a renewed motion for judgment as a matter of law, and a separate

motion again requesting judgment as a matter of law or, in the alternative, for a new trial.[1]

A motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence to support a verdict. *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). A judgment as a matter of law is inappropriate unless there is no legally sufficient evidentiary basis for a finding. *Hiltgen*, 47 F.3d at 700. (quoting Fed. R. Civ. P. 50(a)(1)). A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. *Id*. In making a determination on this type of matter, a court must view the evidence in the light most favorable to the nonmovant. *Id*. The court is not free to weigh the evidence or to evaluate the credibility of witnesses. *Id*. The court must not substitute its own judgment for factual inferences that might be found. *Id*.

The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court, and is reversible only for an abuse of discretion. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed. *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (quoting *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998)); *see also Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). In passing on a motion for a new trial, a trial court does not need to take the view of the evidence most favorable to the verdict winner, but may weigh the evidence. *Shows*, 671 F.3d at 269 (quoting *Bazile v. Bizzo Marine Co., Inc.*, 600 F. 2d 101, 105 (5th Cir. 1979)).

---

[1] Magnolia Manor's second motion requesting judgment as a matter of law or, in the alternative, for a new trial, incorporates in full its previous renewed motion. Thus, this court will analyze the two motions simultaneously.

This does not mean that a judge may order a new trial simply because he or she disagrees with the jury verdict. *Id*. The judge must be convinced that the verdict is against the great weight of the evidence. *Id*.

Magnolia Manor argues that Norris did not establish a *prima facie* case for employment discrimination at trial, warranting judgment as a matter of law. The American with Disabilities Act prohibits discrimination against persons with relatives who have disabilities, providing that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, "discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500, 502-03 (5th Cir. 2002) (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 835 (5th Cir. 2000)).

Magnolia Manor contends that Norris did not establish that Defendant knew of her child's disability so that it could not have been the cause of an adverse employment action.

Magnolia Manor first argues that the two employees who filled Norris' position were hired on November 22 and November 30. Norris' baby was born on December 1, at which point it was discovered that the baby had Down's Syndrome. At trial, however, Jim Wells testified that the two employees were hired "PRN," which means "as needed." Thus, the jury could have logically concluded that Magnolia Manor originally hired these employees temporarily to perform work as needed until Norris could resume her part-time status. Norris returned to work

3

after she was released by her doctor, and was told that there was no job available for her due to cut backs. Testimony from Debra Haynes, a Magnolia supervisor, showed that the owners requested cut backs in early December, yet the census for the facility had increased. Credibility determinations related to the truthful explanations of adverse employment actions are the proper role of the jury.

Magnolia Manor further argues that there is no evidence that any of its managerial staff knew about the condition of Norris' baby. Tracie testified at trial that she spoke with Donna Pharr, executive director of Magnolia Manor, and Jim Wells, who was in charge of Magnolia Manor's kitchen, and explained her baby's condition to them. Jim Wells denied knowledge of the baby's health issues.

This court may not make credibility determinations, as discussed above. Jurors have "undoubted power to sift the evidence before it and to believe or disbelieve portions of the testimony of various witnesses (or even the same witness) in constructing [their] view of what most probably happened . . . ." *Dawson v. Wal-Mart Stores, Inc.*, 781 F.Supp. 1166, 1171 (N.D. Miss. 1992) (quoting *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 367 (5th Cir. 1980)). It is probable that the jurors judged the credibility of the witnesses and chose to believe that Magnolia Manor did have knowledge of the condition of Norris' baby.

Magnolia Manor further argues that Norris prevailed on the contract theory of promissory estoppel, which she did not plead. In support, Magnolia Manor relies on Plaintiff's argument at trial that Jim Wells told Norris not to worry about her job when she left work due to pregnancy complications. Magnolia Manor argues that this testimony is unrelated to an ADA claim, as the statement was made prior to the birth of the baby when no disability existed.

The jury was not instructed on the doctrine of promissory estoppel. The jury was instructed, however, on circumstantial evidence, how to draw reasonable inferences from facts, and what actions violate the ADA. It is assumed that juries follow instructions of law. *Foradori v. Harris*, 523 F.3d 477 (5th Cir. 2008) (citing *United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999)). Thus, the court must assume that this testimony was instead used as evidence indicating discrimination in violation of the ADA. Specifically, the jury could have concluded that Magnolia Manor was amenable to Norris returning to work until it learned of her child's disability.

Magnolia Manor is not entitled to a judgment of law on any permissible grounds.

Defendant Magnolia argues that a new trial is warranted due to the prejudicial error of admitting the alleged statement of Jim Wells that Norris was to have her baby and not worry about her job, and the alleged statement of Donna Pharr Humphries that Norris would miss too much work caring for her disabled child.

Magnolia Manor states that Wells' statement implied that a contract existed between the parties regarding her position. Plaintiff did not plead or argue promissory estoppel. While Magnolia presents one interpretation of Wells' statement and subsequent action, Plaintiff presented another. Again, the jury could have concluded that Magnolia Manor was amenable to Norris returning to work until it learned of her child's disability.

In regards to Donna Pharr Humphries' statement, Magnolia Manor contends that any statement was unrelated to an adverse employment action since it was stated after Magnolia had hired two employees. Again however, the testimony at trial indicated that these hires were made on an "as needed" basis. Thus, it is quite reasonable that the defendant hired the women to fill-in

5

temporarily with the intention of Norris returning after giving birth, but failed to so. The adverse employment action then would be not allowing Norris to return to work, and would have occurred subsequent to Humphries' statement. The statement was also made after Norris filed for unemployment benefits. However, Norris testified that she simply applied for the benefits during the time she was not working to support herself and her children. Norris attempted to return to work at Magnolia after this date, when she was told there was no job available. The jury certainly had the opportunity to judge Norris' credibility and determine whether it believed this testimony.

Magnolia further argues that the statement was privileged. Qualified privilege attaches to statements made by an employer against an employee that affect the latter's employment. *Benson v. Hall*, 339 So. 2d 570, 572 (Miss. 1976). "Absent spite, ill will, malicious purpose, or wanton disregard for the veracity of the statements, and where the communications are limited to those persons who have a legitimate and direct interest in the subject matter, the communications are privileged, and a presumption of good faith attaches." *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 547 (5th Cir. 1994) (citing *id*.). This type of privilege normally arises as a defense in defamation cases, where an employer made a statement to an investigatory body. Regardless, Donna Pharr Humphries made the statement to Janice and Judith Humphires, who had no legitimate and direct interest in the subject matter.

Further, the verdict was not against the great weight of the evidence, even without the admission of the statement made by Donna Pharr Humphries. There is no evidence that the statement was unduly prejudicial to the defendant in light of the other evidence presented at trial.

The court finds that the admission of these statements did not create such prejudicial error

as to warrant a new trial.

Magnolia next argues that there was insufficient evidence that Norris suffered an adverse employment action because of her association with a disabled person. The standard for granting a new trial is if the verdict is against the great weight of the evidence. Plaintiff elicited testimony at trial that the employees who were to fill the positions in the kitchen worked on an as needed basis. Magnolia argues that Plaintiff was never formally terminated, however, her job was not available to her when she returned to work. Plaintiff presented further evidence that Magnolia was receptive of her returning to work until employees learned of her child's disability. The jury's finding that Magnolia did not allow Plaintiff to return to work due to reasons related to the disability is not against the great weight of the evidence.

Finally, Magnolia Manor contends that Norris failed to refute its valid, non-discriminatory reasons for any adverse employment action. The jury's conclusion that Magnolia's proffered reason was pretexual is not against the great weight of the evidence. Testimony at trial indicated that Magnolia directors knew of Norris' child's disability and that at least one had the concern that the child would cause Norris to miss too much work. Further, Magnolia seemed amenable to Norris' return until after her disabled child was born.

For these reasons, Defendant Magnolia Manor is not entitled to a new trial.

Defendant Magnolia Manor's motions **[99, 101]** are **DENIED**.

This the 28th day of July, 2011.

                                          **/s/ MICHAEL P. MILLS**
                                          **CHIEF JUDGE**
                                          **UNITED STATES DISTRICT COURT**
                                          **NORTHERN DISTRICT OF MISSISSIPPI**